23-2711 Western Missouri, Michelle Collins v. Union Pacific Railroad. Mr. Egan. Thank you, Your Honor. May it please the Court, especially may it please you, Judge Woolman, we go back a long way. Congratulations on your long and distinguished career. Thank you. Your Honor, we are here on an appeal from summary judgment and something you've heard many times before. We're here because we believe strongly that summary judgment must be reversed on the racially hostile work environment claim because the district court failed to view all facts and all inferences all plaintiff's way. And it sounds almost trite to say that because of course this court knows that. But when you look at what we have put in the briefs, the record evidence seen in a light most favorable to Michelle Collins, and seeing the comments made by the court, it's hard not to conclude that the court is actually finding facts and weighing evidence. If I might, in the precious time I have, I'd like to start by talking about Tolan v. Cotton because that's the latest Supreme Court precedent dealing with summary judgment. And it is often cited as a qualified immunity case, but it is very much rooted in summary judgment jurisprudence. And we don't see it cited in the Eighth Circuit much. It is cited in one of our key cases, Stewart v. Rise, a 2015 decision. And I suggest to this court that in this case it should be reversed and that Tolan v. Cotton should gain some prominence so that the courts know about what it says. Let me say that the court says it intervened in Tolan because the opinion below reflects a clear misapprehension of summary judgment standards in light of our precedents. And towards the end of the opinion, after setting out the facts from the plaintiff's point of view and the defendant's point of view, the court makes something that's a rather poignant comment that, if you don't mind, I'd like to quote because it captures some things I'm going to get into about the facts in a moment. Witnesses from both sides come with their own perceptions, recollections, and even potential biases. That's why we resolve these things by jury trial. Then the court says the court below should have acknowledged and credited Tolan's evidence with regard to the lighting, his mother's demeanor, whether he shouted words that were an overt threat, and his own positioning during the shooting. So the court should have acknowledged and credited plaintiff's evidence. And we don't see much of that in this opinion, frankly. So under the Tolan case, particularly the details were crucial. And under the Reeves case, the Reeves case is a 9-0 decision, kind of has fallen by the wayside in being quoted on judgment as a matter of law. But it says that it decides the kind of amount of evidence necessary to overcome judgment as a matter of law. And it emphasizes that the courts, when doing these kind of analyses, must disregard all evidence the jury is not required to believe. Now, Your Honors, I have on page 11 to 12 of my reply brief tried to put together a sequence. And I'm not going to skip over the 22 pages of facts in our main brief. The 15 bullet points that emphasize in the main brief at pages 36 to 37, the intense hostile work environment that fell most heavily on minorities. But let's look at some of the things the court says. And we're going to talk about, if we can, the prop that I brought that combines the evidence here. And I bring this prop because in a moment, at a glance, it says what this court must look at, which is the totality of circumstances, not individual. And you cannot credit evidence unless it is uncontroverted, unimpeached, and from an unbiased source. We've got the court saying here in this case, plaintiff's allegations about Miller, even if race-related, concern ordinary employee-supervisor interpersonal conflict. Well, let's look at some of that conduct. If you can see this, it's in the brief, but I'm going to put it in front of you because I'm a trial lawyer. I'm afraid trial lawyers use props. Collins' harassment continued for one half year. There's not one piece of evidence that a white employee suffered the same or similar abusive harassment for six months. Number two, Miller's out of control, ear-piercing mistreatment threatened two minority females, Avena and Collins, to fear for their physical safety. Now will our jurisprudence accept that that is ordinary interpersonal conflict? You know, at trial, we get to get into the details. There's a case, Hathaway v. Runyon, where the court reverses judgment as a matter of law and talks about the fact that at a trial, the plaintiff was repeating the snickers and the noises that she heard. Well, the jury in this case, what needs to hear, what Avena says is that Miller is screaming, following, and forgive me for a moment for doing an impersonating, but screaming, following someone down some stairs to the point that on one occasion, she has to leave work. On another occasion, she gets a migraine headache. And is that ordinary personal interaction between employee and supervisor? She drove two minority females to leave work physically ill, Collins, and upset to the point of crying. Twice, Collins was forced to leave work. This goes to whether or not it affects the term and condition of employment, to have to leave work because you're so upset. She says that the one time she had to leave work, she sat in the car for an hour just to gather herself so she could drive. Miller forced Collins to take on double or triple heavier workload, and Collins told the vice president, Peter Newton, it's because I'm black. So where the court says that Miller treated whites equally, the evidence allows the inference that's not true. Miller denied routine training to the same two minority females mentioned above, Collins and Avena. There's no evidence whatsoever of similar targeting of white employees. Miller messed with and solely targeted the rightful pay and benefits of two African Americans, Collins and Good. Why? Because Miller thought black female Collins made too much money. No evidence that that happened to white employees. Miller purposely refused to speak to Collins. And this isn't accidental. This isn't testimony where she says, you know, we pass in the hall and she just, you know, not see me or not speak. This is purposeful, intentional. You failed to talk to somebody. So again, one piece of evidence, but the jury gets to consider it all in the aggregate and not individually. The court says there is no evidence that Van Loo's turnovers to white YOCs were any better than those made to Plaintiff Robinson and Avena. That's not uncontroverted, unimpeached, undisinterested evidence. Our evidence is to the contrary. 8, 9, and 10 covered transportation. Collins, Robinson, and Avena all testified they were shorted or cheated out of training. Requests and complaints that they made to the management Schultz were ignored. No evidence regarding whites, even though the court says that she got more training. But he has to reach that point by crediting defendants' evidence through Jeremy Schultz. Number nine, all three of the minority females testified to chaos that followed whenever Van Loo did turnovers to those three. Defendant has evidence through Mr. Schultz, interested evidence from the manager who says Jenny Frazier complained. Our evidence is different. Avena says Jenny Frazier was treated more favorably. Jenny Frazier will need to come to court so that we can cross-examine whether or not that's true. And what does it do? Nothing more than create a genuine issue of fact. All three testified to disqualification, Robinson, and attempts to disqualify Collins and Avena for late crews. The evidence in this record is that Jerry Kirkpatrick testified that in 41 years no one had been subject to disqualification for this late crew thing. Now contrary to defendant's argument, Copp versus Samaritan Health supports reversal. Interestingly, you're going to find that the trial court ignores Copp. At page 25 of the summary judgment order, footnote 7, it says that cases that we cite from the 90s are unavailing. Well, there's no expiration date for opinions unless this court overrules it in bank. It's good law. Copp was written by the late, great Richard Arnold. The people on the panel were Beam and Bogue. And it supports reversal. So the equal employment harasser defense that is lodged by the defendant and is adopted by the court, we cite cases that say, Copp versus Samaritan primarily, that that doesn't support summary judgment. And as we point out, the equal employment opportunity or harasser notion is no escape to liability. To quote a case to suggest that they escape liability because they equally harass whites and blacks would give new meaning to the term equal opportunity. Defendant's status as a purported equal opportunity harasser provides no escape hatch for liability. Counsel, the 1990s precedent you mentioned, what case is that? Copp versus Samaritan would be 1990s. And what's the holding from it that you cite is? Oh, that is a case of a cardiologist who was verbally abusive to males and females. And the court says that on this record, you can find that it fell more heavily on females and that that reverses summary judgment. And in our case, when you look at the evidence, the evidence, not what defendant says the evidence is or what the court erroneously concludes, what we've got is that it fell more heavily on the blacks. So Copp versus Samaritan supports reversal. It talks about equal opportunity harasser, not in those terms, but that's the way I use it for shorthand. And the court also refused to consider, we cited Kim versus Nash-Finch. It's a section 1981 case written by Theodore McMillian, whose portrait is in this room. His case is right on point on both our section 1981 and our retaliation for systematic retaliation. Collins herself debunks the equal opportunity harassment in her testimony. Page 28 of their brief, defendant says that she admits Miller was equally rude and harsh to all material handlers. We show on page 12, no, she did not. She explains that race affected it where she says, because I had a lot more incidents than the other clerks. So the only thing that's different is I'm black, I'm older. And she was just so rude to me that it was very obvious that maybe she just didn't like black people. So her testimony is to be believed, but it is not given credit in this opinion. I want to address the argument made by the defendant that, and I call it a perverse argument, I think it is, that the ear-piercing declaration made by Miller upon their first meeting, I'm here to make everybody's lives miserable. By the way, in the order it just says, she came up and said to her, I'm here to make everybody's lives miserable. But that's not the way it was portrayed in the testimony. And the defendant says that that is somehow to be used conclusively against the plaintiff that Miller isn't discriminating against blacks. Well, Miller doesn't get to make that kind of declaration to get out of or exculpate herself by saying I'm here to make everybody's lives miserable. It's one of the facts the jury should consider. Another important point that I've got to get to in my time is, what helps make this case and what makes the opinion below erroneous is that the court follows the defendant's advice and does not consider the Me Too evidence of Vena and Robinson. And you can't do that. We point out that Me Too evidence does not require viable claims. I cite all the cases going back to McDonnell Douglas versus Green, Estes versus Dick Smith Ford, Hawkins versus Hennepin, Phillip versus A&R, all of this court's jurisprudence about Me Too evidence on up to a recent case called Dendinger that doesn't require that somebody who's testifying about their own experiences have a viable claim. Now, Vena's case did go to trial. It did. What was different in that case or was there anything different that that case survived some rejection? Sure. Well, it wasn't a hostile work environment case and it was a case that went to trial on the lack of promotion by Samantha Miller for Nancy or Vena. So Collins testified as to her experiences with Samantha Miller as a Me Too witness. Cantrell Robinson testified as a Me Too witness. But it was a narrower issue about a promotion and we did not go with a hostile work environment claim. Michelle Collins does. So that's what happened in the Vena case. The Vena case went off on the fact of the CBA and whether or not she applied for the job within the meaning of the CBA and I must comment about that here. There is no CBA problem here. Take a look at the Hawaiian Airlines case, the Schnucks case, the fact that she messed with her pay. That was undisputed that she was entitled to the pay. The fact that Miller tried to interfere with her rights of seniority to have first claim on vacation. That is not disputed. You don't need to look at the CBA. So the reference to that in the opinion has nothing to do with the hostile work environment. But you can't ignore the Me Too evidence. I want to quote before I sit down and then I'll reserve my time. The case cannot survive the rule of Sandoval. This Eighth Circuit says, when judging severity and pervasiveness of workplace harassment, defendant, this court has long held harassment directed towards other female employees is relevant and must be considered. The court said that the court erred in disregarding the evidence because it is highly relevant to prove that it was severe and pervasive and the defendant had constructive notice. So it's highly relevant. It goes to the questions of severe or pervasive and being race related. Your Honor, there's other things I could cover, but I think I want to reserve some time for Rabeau. Thank you. Thank you, Mr. Egan. Ms. Setton. May it please the court, Kimberly Seton on behalf of Union Pacific Railroad Company and Judge Wollman, congratulations. Thank you. I'd like to take a minute to address the demonstrative prepared by Mr. Egan and initially point to also the district court's language in the summary judgment order that at page two of the order, the court said that the court first must determine the material undisputed facts. And the court, in reaching its decision below, limited the facts to those that were undisputed and material. The court excluded legal conclusions, argument presented as fact, proposed facts not properly supported by the record or admissible evidence, and improperly controverted facts. The simple fact of the matter is that many of the things that Mr. Egan pointed to were not properly supported, were inadmissible hearsay, and were properly excluded from consideration by the district court. However, taking even a step further back, the court properly granted summary judgment. First I'd like to talk about the hostile work environment claim. Court properly granted summary judgment, finding that the only prong of the prima facie case the court needed to consider was the fourth prong as to whether the conduct affected a term, condition, or privilege of employment. The court found this to be dispositive. Ms. Collins was required to show that the harassment was sufficiently severe or pervasive to alter the conditions of her employment, and the court recited all of the conduct that and found, based on established Eighth Circuit precedent, that she did not meet this very high standard for finding severe or pervasive conduct. In addition, below, Ms. Collins did not address the severe or pervasive argument that Union Pacific raised in its motion for summary judgment. And based on this court's precedent in Passkirk v. Kima, a 2020 case, that the failure to oppose a basis for summary judgment constitutes a waiver of that. So Ms. Collins' attempt now to argue this on appeal is improper, where she did not address severe or pervasive below. As the district court said, the standard for a hostile work environment, this is not a general civility code for the American workplace, and instead a plaintiff has to show that the workplace is permeated with discriminatory intimidation, ridicule, or insult. And the court specifically found that Ms. Collins did not establish that type of conduct. Our briefing and the court's briefing identifies cases finding that similar conduct did not rise to the level of a hostile work environment. And to the extent that Mr. Egan references the COP decision, that is distinguishable from our present facts in the COP decision that while the court did say that there was a difference in how men versus women were treated and that the lower court erred in not considering that, in COP there was evidence that, in fact, the alleged harasser had shoved a woman and had referred to her, pardon me for using such language, but had referred to her as a bitch on multiple occasions. And, in fact, that is not what we have here. We do not have any physical conduct towards Ms. Collins. We do not have any different conduct, and in fact, Ms. Collins herself testified that she was aware that Samantha Miller had screamed at other white employees and that Caucasian employees had complained about Ms. Miller's conduct. So contrary to COP, there was consistent treatment between how Samantha Miller treated black employees. And, instead, I would say, as we identify in our brief, that Lenzen versus WorkComp Reinsurance is a much more analogous case where, in fact, there was consistent treatment between the protected category and employees outside of the protected category. So for that reason, the court should affirm the district court's grant of summary judgment as to the hostile work environment claim. In regard to Ms. Collins' claim of race discrimination, the district court, again, correctly granted summary judgment. The court found that it only needed to consider prong three of the prima facie case that Ms. Collins did not suffer an adverse employment action. And, in fact, this is Ms. Collins' own admission in her briefing below, where she stated that she did not suffer any discreet acts to constitute an adverse employment action. She is bound by that admission. She has waived that argument on appeal. However, despite this admission, the court went on to consider whether she had articulated a series of lesser actions that had a cumulative effect of causing her to suffer a serious employment consequence. And that's at page 21 and 22 of the district court's opinion. And the court found that she had not established that type of series of lesser actions. In regard to the district court's finding that Ms. Collins' claims regarding the four instances where she was paid at an overtime rate of the person who filled her position when she was on holiday, as opposed to her own overtime rate, that directly implicates the collective bargaining agreement and is preempted by the Railway Labor Act. Ms. Collins herself, in her grievances, which are submitted at Exhibit A, page 242 and 243 of the addendum, she herself identified the specific article of the collective bargaining agreement that she believed the company violated by not paying her. Obviously, Union Pacific took a different position as to what that provision of the collective bargaining agreement required. This is exactly the type of minor dispute which would require interpretation of the So for those reasons, again, the court should affirm the dismissal of the race discrimination claim. And lastly, turning to the retaliation claim, once again, the court found that Ms. Collins had failed in prong two of her prima facie case and had not suffered an adverse employment action. And this goes again back to her admission that she did not suffer an adverse employment action. And also, once again, the court considered whether there was a cumulative, a series of cases that led to a cumulative effect of causing her to suffer a serious employment consequence. And the court found that that was simply not the case. In the briefing, Ms. Collins has failed to point to any specific protected conduct that she engaged in and tie that to a specific adverse action. Instead, she blanketly states that she complained throughout her employment and then states that she was retaliated against without providing any specific circumstance of complaint and then tying it to a specific adverse employment action. And without doing so, her claim fails. Moreover, if you look at the actual facts of her complaints, Ms. Collins did not complain of race discrimination. When she complained to the values line in June of 2017 while she worked in the supply department, her complaint makes no mention of race and it was submitted anonymously. During her deposition, Ms. Collins admitted that she made no mention of race in her complaint and again that it was anonymous. You can find that at page 224 of the addendum. In regard to her May of 2020 complaint to the values line, again regarding the treatment from Cheryl Harris and Rhonda Van Loo in regard to turnovers, once again she made no mention of race in her complaint and admits that during the investigation she made no allegation that she was being treated differently because of her race. The case law says, specifically Helton v. Southland Racing Corp., which is a 2010 decision of this court, that this court, if you don't identify protected conduct, if you don't identify a protected category in your complaint, then it can hardly be protected conduct for purposes of in that case Title VII and certainly analogous to 1981. Simply making complaints in the workplace does not imbue you with the protection. But again, Ms. Collins still does not identify any specific adverse action that followed an alleged protected activity. To the extent that her complaint in the fall of 2017 to Pete Newton, where she testifies that she did say that she had been treated differently because she was black, in fact all of the conduct about what she was complaining had already occurred. She told Pete Newton that she had been sent, had to leave work twice because of Ms. Miller's time, her vacation time had been removed from the book. So all of that conduct about which Ms. Collins complains had already taken place and there is established precedent in this circuit that you cannot rely on previous conduct for the purposes of causation in a retaliation claim. For all of these reasons, therefore, the court should affirm the district court's grant of summary judgment on the retaliation claim as well. I believe I've addressed the Me Too evidence, but I do want to reiterate that the court did not need to address the Me Too evidence because it found in other prongs of the prima facie case and did not need to reach the Me Too evidence. However, there is no evidence in the record that the court failed to address that. In fact, the district court identifies conduct that happened to Ms. Avena and to Ms. Robinson in its decision and yet still reaches the conclusion that there was no severe or pervasive conduct rising to the level to make a prima facie case of a hostile work environment. And more importantly, as I pointed out earlier, a lot of this alleged Me Too evidence, which is hearsay in many regards as we set forth in our brief, it's contradicted by Ms. Collins's own testimony where she admits that Caucasian employees were treated in similar fashion, where she admits that she doesn't know who made decisions, where she admits that it was appropriate for Ms. Miller to deny her the three-day training. She just believed it should have been more professional for Ms. Miller to provide her explanation where she acknowledges that there's no evidence in the record that the turnovers provided by Ms. Van Loo prohibited Ms. Collins from doing her job. There's no evidence that any conduct by Ms. Van Loo led to Ms. Collins being disciplined in any regard. There's no evidence of that in the record. We would offer that Ms. Collins's own testimony is frankly what is relevant for purposes of her claim. I do want to raise one last issue that in a- Wasn't there some dispute about or disagreement of position about assignment to certain menial tasks that were not generally given to people at the level of the plaintiff? I believe, Your Honor, that the only evidence of menial tasks was Ms. Collins's testimony from 2010 when she was working under Craig Mitchell and she said that she had been assigned a couple tasks that she did not believe that white employees were assigned to. In regard to her work in the supply department or in the transportation department, I am not aware of any record testimony where she said she was given menial tasks that were different. The last issue I did want to make is that in the statement of issues presented, Ms. Collins had identified discovery disputes that there should have been certain evidence provided and identified a ruling made by the district court in a motion to compel discovery. However, that was not briefed in her brief. I assume that Ms. Collins has abandoned that issue on appeal but would point out Malone versus Vasquez, which is a 1998 decision from this court that failing to brief an issue means it is abandoned. Counsel, I was interested in a reference to waiver that some claims or arguments on appeal have been waived because they were not raised in the summary judgment proceeding. Could you touch on that and which of the claims waiver would impact? Sure. In regard to the hostile work environment claim, Ms. Collins below did not identify or did not respond to Union Pacific's argument that the conduct did not rise to the level of severe or pervasive. Therefore, we would believe that was waived. Below Ms. Collins failed to identify and address the issue of an increased workload. As to Ms. Collins, we would believe that argument is waived as well. Specifically also in regard to the argument that she suffered a specific discrete adverse employment action in regard to her race discrimination or her retaliation claim given her admission in the court below that she did not have a discrete adverse employment action, we would believe that her ability to argue that is waived before this court as well. Absent any additional questions, I will sit down. Thank you. Yes, sir, I'm going to be flying here. Your Honor, on the waiver question, all they attacked in the summary judgment was we didn't meet the five elements. And please go back and look at the summary judgment record because they have to concede as they had to that we address the severe or pervasive element when we're talking about the Stewart versus Rice case. So we specifically address it. But our job on summary judgment is to bring forth facts that show a genuine issue. So everything, please look at the 142 paragraphs, 82 of which we controverted where we put forth evidence that goes to show severe or pervasive, the things that are here. When you do it to more than one person, while it's on my mind, you cannot disregard and ignore the Me Too evidence. Your case law is absolutely to the contrary. You have said for years and still do that evidence from other employees about how they're treated should be freely admissible at trial. So it is a fatal error that this court ignored that. As far as her fearing for her safety, we quote in our brief where she says, and then I'm going to sit down because I see my time is gone, Miller could hurt someone at any moment. She was extremely aggressive, rude, and loud towards Collins. That comes from Collins' depo cited in our brief and cited at the summary judgment record. Your honors, this case cannot be one that goes down in the annals of summary judgment. We ask you to simply do the right thing, make the call, call the video replay and say, you know what, this was simply out of bounds. These are issues of fact, juries really should decide them. It's not a certain case, we're not going to be guaranteed to win, but you know what, someone should decide these facts and not the court below. Counsel, what's your best reference to evidence in the record of race being racial animus, race being the motivation for Miller's conduct? Yeah, great question judge, because we don't need one bit of evidence of somebody making an epithet. As a matter of fact, please look at the Harris case when they talk about when you're looking at what's abusive conduct, whether something is severe or pervasive. Justice Scalia says, it's for juries, we want juries to do it. We're going to leave basically unguided juries to decide based on the circumstantial evidence. They didn't call her the N word, but you don't need to. You ignore her, you scream at her every day, you follow her downstairs, you sit screaming and say, what are you doing here? At some point in time, if a black had done that to a white, would someone ask, I wonder if there's a racial component here? How often can you do it on this record to just the minority employees, and our record is minority employees, the supported evidence, and have somebody not conclude, I wonder if there's a race component to it? So it's circumstantial evidence, but it certainly is the kind of evidence that I've been dealing with for 47 years, and you present it to the jury and let them make the call. Thank you. Any other questions? Otherwise, I will sit down by your leave. Thank you so much. Thank you also, Ms. Seaton. The court appreciates both counsel's participation and argument before the court this morning. We will continue to study the matter and render decision in due course. Madam Clerk, I believe we have one more case. Yes, Your Honor. All right.